UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WALTER PRINCISVALLE | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 302CV154 (JGM) |
| | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| COLLAVINO NORTHEAST | ) | |
| CONSTRUCTION, LLC | ) | |
| | ) | |
| Defendant. | ) | NOVEMBER 18, 2005 |

## JOINT PRETRIAL MEMORANDUM

**STATEMENT OF THE CASE**

Ladies and gentlemen, this case involves a claim for personal injuries by Mr. Walter Princisvalle of Nyack, New York, against Collavino Northeast Construction, which has offices in Stamford, Connecticut. The accident that is the subject of this case occurred in December, 2000, in Stamford, Connecticut, during the construction of the Grey Rock Towers. Mr. Princisvalle was the acting Project Superintendent on the project. Collavino Northeast Construction was the concrete subcontractor. The plaintiff claims that on December 14, 2000, he was struck by a falling aluminum beam that had been used to support concrete forms. He claims that as a result he suffered injuries to his neck and back. The plaintiff claims that he was injured as a result of the negligence of employees of the defendant and that he suffered personal injuries. The defendant leaves the plaintiff to his proof with regard to negligence and claims that some of the injuries suffered by the plaintiff relate to pre-existing problems and not this accident.

**STIPULATIONS OF FACT**

1.      On December 14, 2000, Walter Princisvalle was working as a construction superintendent at the so-called Grey Rock Tower in Stamford, Connecticut.

1a.     As construction superintendent, it was Mr. Princisvalle's responsibility to tell the workers how to build the building.  He took care of the trades and told them how to start and how to finish building the building.

2.      At that time, the defendant in this matter was the sub-contractor for the installation of concrete and appurtenances within the building.

3.       As part of the effort to pour the concrete, various types of forms were necessary into which the concrete would be poured.

4.      These forms were constructed by employees of the defendant.  During the course of the concrete pouring when the concrete became "cured" the forms would then be removed from that cured concrete and be moved to another area on the same floor with a continuation of the pouring of the concrete.

5.      Some of the concrete would require the installation of "rods".  The installation of the rods were the responsibility of the iron workers who were employees of another subcontractor at the site.

6.      As far as the installation of forms were concerned, aluminum beams were used as part of the forms.  These would support plywood, which in turn would support the concrete as it cured. The installation in this particular time were to become the garage as the building was coming up from the sea level layer where the garage construction continued.

7.      On said date, the plaintiff was speaking to two iron workers concerning perspective jobs that they were going to be doing in the garage area.

8.      While they were speaking, an aluminum beam weighing fifty to eighty pounds came down and struck the plaintiff across the shoulders and his neck area having been pushed to safety by one of the iron workers.

9.      The type of work being done by the agents, servants and employees of the defendant in the removal of the supports was done so to bring about the collapse of the boards and eventually the aluminum beam down upon the floor beneath.

10.    The technique that would be used in creating a location for the concrete to be poured among other things had four jacks, one of which would go to one end of the girder and another at the other end and then in the center there would be two additional jacks.

11.    The particular girder that was in the area in which the reduction was taking place had all of its supports removed and it was there unsupported by jacks at either end or the center.

12.    The plaintiff was removed to Saint Joseph's Medical Center and then by ambulance to Stamford Hospital.

13.    Following this he was unable to continue work.

**LIST OF WITNESSES**

1.    Walter Princisvalle –  (by way of testimony)

Walter Princisvalle is the plaintiff in this matter.  He will testify as to his work experience, the office he held at the time of the accident about which this lawsuit is brought, the injuries he suffered, what happened that brought about the accident and the change the injuries brought about in his life.  He also testifies to the medical care he received, the expenses concerning it and his present status on Workers' Compensation.  The expected time for Walter Princisvalle's testimony will be approximately three hours.

(It is expected the reading of the following reports will take one to two hours.)

2.    Saint Joseph's Medical Center – (by way of medical reports)

3.    Access Ambulance – (by way of medical reports)

4.    William Caragol, M.D. – (by way of medical reports)

5.    Thomas Dibartholomeo, M.D. – (by way of medical reports)

6.    Deborah A. Shapiro, M.D. (Stamford Hospital & Rockland Pulmonary) – (by way of medical reports)

7.     Irwin E. Librot, M.D. (Neurologist - Rockland Neurological Associates) – (by way of medical reports)

8.     William B. Sacks, M.D. (Stamford Hospital) – (by way of medical reports)

9.     Larry Moy, M.D. (Stamford Hospital) – (by way of medical reports)

10.    Joel M. Schwartz, M.D. (Radiologist - Hudson Valley Radiology Association) – (by way of medical reports)

11.    Steven Klein, M.D. (Radiologist - Nyack Hospital) – (by way of medical reports)

12.    Kenneth Blumberg, M.D. (Neuroradiologist – Hudson Valley Radiology Associates, P.L.L.C.) – (by way of medical reports)

13.    Rochelle Brief, M.D., Ph.D. (Bardonia Rehabilitation Medicine) – (by way of medical reports)

14.    Daniel Spitzer, M.D. (Neurosurgeon – Hudson Valley Neurosurgical Associates, LLC) – (by way of medical reports)

15.    Roger Frey, M.D. (Radiologist – Nyack Hospital) – (by way of medical reports)

16.    Michael Daras, M.D. (Neurologist) – (expert witness – by way of testimony or deposition)  It is expected that Dr. Daras' testimony will take approximately three hours.

Dr. Daras will testify as to the plaintiff's limitations, disabilities and his recommendation that the plaintiff needs neurosurgical evaluation to address the issue of surgery for the cervical problem as there is evidence of radiculopathy and myelopathy.  Dr. Daras' opinion is based upon the I.M.E. he performed on Walter Princisvalle on May 22, 2003.  Dr. Daras concluded that as a result of the incident before described and the injuries that resulted there from the plaintiff could no longer work and is totally disabled as a result of the occurrence.  Dr. Daras will rely on the medical report of May 22, 2003.

17.    Ralph Greenberg, M.D. (Neurologist - Ralph Greenberg, P.C.) – (expert witness – by way of testimony)  It is expected that Dr. Greenberg's testimony will take approximately three hours.

Dr. Greenberg's opinion of the plaintiff, Walter Princisvalle, is that he is totally disabled.  His diagnosis of that is of posterior decompression, bilateral cervical laminectomy at C3-4, C4-5 and C5-6, that plaintiff's medical history is unrelated to the cervical spondylosis which is the main cause of his disability and that his present condition is unrelated to his medical status existing before the accident in that there were no previous symptoms related to cervical pathology.  Dr. Greenberg's opinion is based upon the examinations he performed on the plaintiff on December 18, 2003, August 26, 2004, February 15, 2005 and on June 28, 2005.  Dr. Greenberg will rely on the medical reports and bills from the said examination dates.

18.    Tanvir F. Choudhri, M.D. (Neurosurgeon - Mount Sinai Medical Center) – (by way of medical reports)

19.    Donna Scuderi, M.D. (Radiologist - Nyack Hospital) – (by way of medical reports)

20.    David J. Eisen, M.D. (Pathologist) – (by way of medical reports)

21.    Rafael Vazquez, M.D. (Radiologist – Mid Rockland Imaging) – (by way of medical reports)

22.    Fannie Princisvalle –  (by way of testimony)  It is expected that Ms. Princisvalle's testimony will take approximately thirty minutes.

Mrs. Princisvalle is the wife of Walter Princisvalle, who lives with him.  She will testify as to the change that took place in Mr. Princisvalle following the injuries he suffered.  She will talk about their life together prior to the injury and the changes that have taken place in that life and the life with Walter.  She will testify concerning the change in which he is able to live.

23.    Ross Musccolino – (expert witness - by way of testimony)  It is expected that Mr. Musccolino's testimony will take approximately two hours.

Mr. Musccolino , at the time of the accident, was the Vice President of Fuller Construction, which was the construction arm of the company building the structure.  Mr. Musccolino will

testify concerning the job held by Mr. Princisvalle, what their responsibilities were, where it was that he was expected to be, what the work environment was, what the responsibility of the subcontractor defendant was as to safety and what their responsibility was as far as taking down and putting up. Mr. Muscolino will discuss failures of the defendant's employees leading to the injury to the plaintiff. He will also discuss the requirements of the contract between the general contractor and the defendant and the failure of the defendant's employees to perform the requirements of the contract. Further, he will discuss the method for taking the forms. Mr. Muscolino's opinion is that the injury was the result of the defendant. Based upon the expected testimony of others. Mr. Muscolino will also rely on the contract between the general contractor and the defendant.

24.     John H. Alba – (by way of testimony and if unavailable by way of deposition) It is expected that Mr. Alba's testimony will take approximately one to two hours.

Mr. Alba will testify that he worked on the Grey Rock Project and that Mr. Bruno was the general superintendent. Mr. Alba looked up to Walter and he was Jimmy's "trusted arm", sort of speak. He will testify that Collavino was one of the subs on the project. The project was to build the superstructure being the concrete superstructure. He will testify that the person from Collavino Company was Mario Ogera. He will testify that all the concrete was poured onsite. He will testify that the assistant superintendent had not much authority over the employees of the subcontractor. He will testify that Walter, the plaintiff of this case, had been around for along time and he knew instinctively what needed to be done. It wasn't the responsibility of people such as Princisvalle to direct the subs or employees of the concrete subcontractor what to do and who should do it. He will testify as to the daily logs. He will testify of the sheet he prepared for December 14, 2000. The laborers of Collavino were stripping and restoring an area called 52.20. That would refer to an elevation of the building. He will testify that the carpenters did the bulk of the disassembly with the laborers assisting and cleaning up. He will describe what a screw jack is. He will describe the way in which the screws are actually used in the framing. He will describe how stripping is done. He will describe how the ends would be dealt with and how then the structure would be permitted to fall. He will testify that when Collavino was stripping forms they put up any kind of barrier in the area in which they were working. What they used for barriers would be yellow caution tape. He will testify as to what the daily log that he did showed on December 14, 2000. He will testify that Walter told him what had happened to him when he was hit to the effect that beam dropped on his back. He will testify concerning the accident report that he made. He will testify that the workers were leaving the area in a dangerous way and that one of the techniques they used leaves the area pretty well unstable. Mr. Princisvalle

was telling the workers they are taking down too much of the area. It's too dangerous to do it that way. He will testify that he doesn't remember Walter Princisvalle returning to work after the accident. He will testify that Walter Princisvalle is a person that knew his job well. He was a person you would go to, the hit man you would go to Walter, the general superintendent. He will describe that after seeing Walter after the accident he seemed frail. He will testify seeing Walter Princisvalle after his injuries.

25.    William W. Durie – (by way of testimony and if unavailable by way of deposition) It is expected that Mr. Durie's testimony will take approximately thirty minutes.

        Mr. Durie is the Risk Manager for the general contractor. He will talk about it and what it does.

26.    James Bruno – (by way of testimony and if unavailable by way of deposition) It is expected that Mr. Bruno's testimony will take approximately one hour.

        Mr. Bruno will testify what his job was at the Grey Rock Tower Project. He will testify that he ran the project and that Walter was the supervisor on site. He will discuss Mr. Princisvalle and what he knew about him, what his jobs were, what kind of a person he was, that Walter never talked about ever having cancer to him. Walter seems pretty young and jovial. If you looked at him he looked twenty years younger than what he was. He will testify as to what he understood in a conversation about six months ago in which laborers and the carpenters would be brought onto the job. He will testify that it's his responsibility and so forth how to remove the forms and that generally speaking was the foreman's obligation of the contractor in this matter. He will testify as to how he understood how the injury took place. He will testify that while working for Collavino, he struck the wrong piece and dropped along a high beam which hit Walter. He will testify that if Walter wished something to be stopped he had to go through Collavino.

27.    John H. Romano – (by way of testimony and if unavailable by way of deposition) It is expected that Mr. Romano's testimony will take approximately thirty minutes.

Mr. Romano was another iron worker standing and talking with Mr. Princisvalle at the time of the accident. He will testify of the conditions at the present time and of the conversation with Mr. Princisvalle. He will testify concerning what it was that he saw. He saw the beam strike Mr.

Princisvalle and what happened to Mr. Princisvalle thereafter.  He will testify that he was an iron worker foreman.

28.    Daniel M. Gardecki – (by way of testimony and if unavailable by way of deposition)  It is expected that Mr. Gardecki's testimony will take approximately thirty minutes.

Mr. Gardecki was a steel iron worker and a foreman of the iron workers and on the date of the accident on which the accident took place, he was standing talking to Walter Princisvalle, the Plaintiff, when the plaintiff was injured.  He will talk about the conditions that existed at the time that he was having the conversation with Mr. Princisvalle and what happened at that time.

29.    John Fata – (by way of testimony) –   It is expected that Mr. Fata's testimony will take approximately one hour.

Mr. Fata is a carpenter foreman with Collavino Northeast Construction Co.  Mr. Fata did not witness the incident in question.  Mr. Fata will testify that it was his understanding that there were a couple of laborers who were stripping forms from the ceiling and that Walter Princisvalle was going through the job site in order to make sure that things were being done properly.  Mr. Fata will testify that all of a sudden, while the laborers were stripping the forms, an aluminum I-beam fell and struck Walter Princisvalle in the back.  Mr. Fata will also testify that the laborers, employed by Collavino Construction, did not see Walter Princisvalle.  Mr. Fata will further testify that carpenters were normally supposed to do the stripping.  He will add that the laborers sometimes worked with the carpenters.  He will testify that on the date of the incident, Mr. Fata confirmed that there were no carpenters working with the laborers.  Mr. Fata will testify that it is his opinion that the laborers should have warned Walter Princisvalle before they continued with the stripping.  Mr. Fata will also testify that his opinion is that Collavino Northeast should have been using carpenters to do this work because carpenters have more experience in the stripping of concrete forms.  He will also state that the laborers should have been more aware of their surroundings before they dropped the I-beam.

30.    Joseph J. Faugno – (by way of testimony) –   It is expected that Mr. Faugno's testimony will take approximately one hour.

Mr. Faugno is the carpenter union steward.  He is employed by Collavino Northeast Construction Co.  Mr. Faugno did not actually witness the incident in question.  Mr. Faugno will testify that it was his understanding that the incident took place within the indoor parking garage ramp on the

fourth floor and that in the area there were laborers from Collavino Northeast who were stripping concrete forms. He will testify that Walter Princisvalle was walking around in that area. Mr. Faugno will testify that when Mr. Princisvalle was in that area, an I-beam supporting the concrete forms fell and struck Walter Princisvalle in the back of his neck and shoulder. He will testify that the I-beam was an aluminum beam that was approximately twenty one feet long with a weight of approximately eighty pounds. Mr. Faugno will confirm that on the date of the incident all of the Collavino Northeast workers who were doing the stripping were laborers. He will also confirm that there were no carpenters who were helping the laborers do this stripping procedure. Mr. Faugno will testify that according to union procedures, carpenters are required to strip concrete forms because they are the persons who build the forms. Mr. Faugno will testify that it is his opinion that the cause of this incident was the Collavino Northeast laborers who failed to clear the area. Mr. Faugno stated that when you dropped anything you are supposed to make sure that the area is clear. He will also state that in some circumstances it might be necessary to re-shore certain areas in order to prevent other sections from falling. Mr. Faugno will further testify that it is his understanding that after this incident took place the Collavino Northeast labor crew and foremen who were responsible for this incident were reprimanded for their actions. He will state that the foreman for this labor crew was Richard Ludlow and the other members in the labor crew were: Cedric Branford, Randolph Morris, Silbet Oakley and Gregory Franklin.

31.     Tony Cyran (Claims Adjuster at George A. Butler Adjusters, Inc.) – (by way of deposition)  It is expected that Mr. Cyran's testimony will take approximately one hour.

Mr. Cyran investigated this accident on behalf of the Zurich Insurance Company working as an adjuster at the George A. Butler Insurance Company. Mr. Cyran will testify that he took a recorded statement from Walter Princisvalle concerning what had occurred. He will testify that he placed testimony on a cassette tape using a cassette recorder. Mr. Cyran will testify that the statement was never recorded and the tape cannot be located since the entire investigatory file concerning Mr. Princisvalle has been lost. Mr. Cyran will testify that he took a recorded statement of John Fada and Joseph J. Faugno. Mr. Fada was a carpenter foreman with Collavino North East Construction, LLC. Mr. Cyran will testify that he took a statement by recording it of Mr. Fada and that his recorded summary of that statement has been lost. Within that statement, Mr. Fada will testify to the fact that all of the sudden when all of the laborers were stripping the forms an aluminum high beam fell and struck Walter Princisvalle in the back. Apparently, the laborers employed by Collavino Northeast Construction, LLC did not see Mr. Princisvalle. Mr. Cyran reports of the last paragraph that Mr. Fada's opinion was that the laborers should have

warned Mr. Princisvalle before they continued with the stripping.  It was also Mr. Fada's opinion that Collavino North East Construction, LLC should have been using carpenters to do this work because carpenters have more experience in the stripping of concrete forms.  Mr. Fada also stated that the laborers should have been more aware of their surroundings before they dropped the beam.  Collavino Northeast Construction, LLC was a subcontractor who kept the contract.  Mr. Cyran also wrote that based upon the interview with Mr. Gardecki, you should have used caution tape around the area where the laborers were stripping the concrete form.  Mr. Fada also felt that the laborers should have warned them.  Mr. Fada stated that this actually could have been prevented if the laborers had told him what was going on.  Mr. Cyran reported that he took photographs of the area and he had the film developed.  Mr. Cyran does not have the photographs because he claims that he lost the file.   Mr. Cyran also will report in his deposition that they were securing the contract between Caprielli and Collavino.  He did and sent them to Zurich Insurance Company.

Within the recorded statement by Mr. Cyran of Joseph Faugno, who is the carpenter union steward employed by Collavino Northeast Construction Co., Mr. Faugno will testify that it was his understanding that the incident took place within the indoor parking garage ramp on the fourth floor and that in the area there were laborers from Collavino Northeast who were stripping concrete forms.  He will testify that Walter Princisvalle was walking around in that area.  Mr. Faugno will testify that when Mr. Princisvalle was in that area, an I-beam supporting the concrete forms fell and struck Walter Princisvalle in the back of his neck and shoulder.  He will testify that the I-beam was an aluminum beam that was approximately twenty one feet long with a weight of approximately eighty pounds.  Mr. Faugno will confirm that on the date of the incident all of the Collavino Northeast workers who were doing the stripping were laborers.  He will also confirm that there were no carpenters who were helping the laborers do this stripping procedure.  Mr. Faugno will testify that according to union procedures, carpenters are required to strip concrete forms because they are the persons who build the forms.  Mr. Faugno will testify that it is his opinion that the cause of this incident was the Collavino Northeast laborers who failed to clear the area.  Mr. Faugno stated that when you dropped anything you are supposed to make sure that the area is clear.  He also will state that in some circumstances it might also be necessary to re-shore certain areas in order to prevent other sections from falling.  Mr. Faugno will further testify that it is his understanding that after this incident took place the Collavino Northeast labor crew and foremen who were responsible for this incident were reprimanded for their actions.  He will state that the foreman for this labor crew was Richard Ludlow and the other members in the labor crew were:  Cedric Branford, Randolph Morris, Silbet Oakley and Gregory Franklin.

32.     Felice A. Balkin (Claim Specialist – Zurich Ins.) – (by way of deposition)  It is expected that Ms. Balkin's testimony will take approximately one hour.

Ms. Balkin is a claim specialist for the Zurich Insurance Company and more particularly was in charge of this Workers' Compensation claim.  Ms. Balkin had been assigned to the claim of Walter Princisvalle.  She will testify concerning the claims made by Mr. Princisvalle and the findings that were concluded concerning Walter Princisvalle, that is that he is permanently disabled and the amount that is being paid to him on a basis.  That amount is based upon the formula, all of which is set forth at the deposition.

**LIST OF EXHIBITS**

1.     Walter Princisvalle's Tax Return for 1997 (state)

2.     Walter Princisvalle's Tax Return for 1998 (state)

3.     Walter Princisvalle's Tax Return for 1999 (state)

4.     Walter Princisvalle's Tax Return for 2000 (state)

5.     Walter Princisvalle's Tax Return for 2001 (state)

6.     Walter Princisvalle's Tax Return for 2002 (state)

7.     Saint Joseph's Medical Center – 12/14/00 (waiting for medical reports)

8.     Access Ambulance – medical reports from date of accident 12/14/00
       BILLS – 12/14/00-  $294.00
              **TOTAL = $294.00**

9.     Stamford Hospital (ER) – reports by William Caragol, M.D. and Thomas Debartholomeo, M.D. – exam of CT scan of lower cervical/upper dorsal spine with out contrast by Dr. Caragol on 12/14/00 and an exam of thoracic spine by Dr. Dibartholomeo on 12/14/00
       BILLS – 12/14/00 -  $1,559.85

**TOTAL = $1,559.85**

10.    Rockland Pulmonary Association – follow ups with Primary Care Physician, Deborah
       Shapiro, M.D. –12/19/00, 1/17/01, 8/14/01, 8/28/01, 9/18/01, 10/1/01, 11/1/01, 4/18/02,
       6/19/02, 8/9/02, 10/16/02, 10/18/02, 7/10/03, 9/17/03, 9/30/03
       BILLS – 12/19/00-    $80.00
               6/19/02 -  $230.00
               7/10/03 -  $230.00
               **TOTAL =$540.00**

11.    Rockland Neurosurgical Associates – reports by Irwin Librot, M.D. – neurological
       evaluation on 12/22/00, re-evaluation on 1/22/01, motor nerve conduction on 1/30/01 and
       electro-diagnostic evaluation on 1/30/01
       BILLS – 12/22/00 - $250.00
               1/22/01 -   $95.00
               1/30/01 - $672.00
               5/9/01 -   $50.00
               **TOTAL = $1,067.00**

12.    Mid Rockland Imaging – reports by Joel M. Schwartz, M.D. and Rafael Vazques, M.D. –
       report dated 12/27/00 of an MRI of Walter's cervical spine on 12/26/00 by Dr. Schwartz

13.    Nyack Magnetic Resonance Imaging – Reports by Joel M. Schwartz, M.D. and Kenneth
       Blumberg, M.D. – report dated 12/27/00 of exam of MRI of cervical spine on 12/26/00
       by Dr. Schwartz and report dated 1/26/01 of MRI of lumbosacral spine on 1/26/01 by
       Kenneth Blumberg, M.D.

14.    Nyack Hospital – CT upper thoracic spine on 1/10/01 by Steven I. Klein, M.D., left lung
       nodule chest, PA & lateral by Roger Frey on 9/9/02, 4/11/05 physicians instructions and
       scheduled surgery for 4/20/05, 4/13/05 admitted to Nyack Hospital for x-ray by Donna
       Scuderi, 4/20/05 admitted for surgery, operative report by Dr. Spitzer, Pathology Report
       by David J. Eisen, M.D. and discharge summary by Dr. Spitzer
       BILLS – 1/10/01 - $616.00
               **TOTAL = $616.00**

15.   Bardonia Rehabilitation Medicine – follow ups and report by Rochelle Brief, M.D. –
      evaluation on 8/1/01, follow ups on 8/4/01, 8/6/01, 8/8/01, 8/13/01, 8/15/01, 8/20/01,
      8/22/01, 8/27/01, 9/5/01, 9/10/01, 9/12/01, 7/30/01, 12/19/01 (report by Dr. Brief),
      5/21/02, 5/25/02, 5/28/02, 6/1/02, 6/4/02, 6/8/02, 6/11/02, 6/17/02

      BILLS – 7/30/01 -   $200.00      9/10/01 - $1,270.00
               8/1/01-    $170.00      9/12/01 - $1,480.00
               8/4/01-    $720.00      5/21/02 -   $555.00
               8/6/01-  $1,035.00      5/25/02 -   $870.00
               8/8/01 - $1,350.00      5/28/02 - $1,185.00
               8/13/01 - $1,290.00     6/1/02 - $1,500.00
               8/15/01 - $1,605.00     6/4/02 - $1,815.00
               8/20/01 -   $390.00     6/8/02 - $2,130.00
               8/22/01 -   $705.00     6/11/02 - $2,445.00
               8/27/01 -   $840.00     6/17/02 - $2,538.12
               9/5/01 -    $970.00
               **TOTAL = $25,063.12**

16.   Hudson Valley Radiology Associates, P.L.L.C. – reports by Kenneth Blumberg, M.D.
      and Joel Schwartz, M.D. – report dated 7/1/02 of exam of MRI of cervical spine on
      6/28/02 by Dr. Blumberg and report dated 9/13/04 of exam of MRI of cervical spine on
      9/9/04 by Dr. Schwartz

17.   Hudson Valley Neurosurgical Association – consultation report on 7/15/02 and opinion
      on 8/23/02 by Daniel Spitzer, M.D.

18.   Michael Daras, M.D., Ph.D. – (expert witness) I.M.E. on 5/22/03 of report of MRI of
      cervical spine on 6/28/02, report of EMG on 1/30/01 and report of MRI of lumbosacral
      spine on 1/26/01

19.   Ralph J. Greenberg, M.D., P.C. – (expert witness) reports by Dr. Greenberg dated 1/7/04,
      8/31/04, 2/18/05 and 7/8/05

20.   Mount Sinai Medical Center Department of Neurosurgery – report of consultation by
      Tanvir F. Choudhri, M.D. dated 9/14/04

21.    Photos of Walter Princisvalle – after surgery dated 5/1/05

22.    Notice of Deposition of Tony Cyran dated 2/15/05 (letter dated 2/7/05 & Notice of Deposition dated 1/5/04 w/ Subpoenas)

23.    Deposition Transcript of Tony Cyran dated 2/15/05

24.    File Maintenance dated 2/15/05

25.    Letter to Zurich Insurance Company (Greg W. Hooper) from Tony Cyran (Report #1) dated 3/23/01

26.    Letter to Walter Princisvalle from Tony Cyran dated 3/23/01

27.    Letter to Camppelli Enterprises, Inc. (Joseph Anello, VP) from Tony Cyran dated 3/23/01

28.    Letter to Stamford Hospital (med recs dept.) from Tony Cyran dated 3/26/01

29.    Letter to Stamford Health Center (med recs dept.) from Tony Cyran dated 3/26/01

30.    Letter to Access Ambulance Company, Inc. (med recs dept.) from Tony Cyran dated 3/26/01

31.    Letter to Irwin E. Librot, M.D. from Tony Cyran dated 3/26/01

32.    Letter to Zurich Insurance Company (Greg W. Hooper) from Tony Cyran (Final Report) dated 5/1/01

33.    Letter to Zurich Insurance Company (Greg W. Hooper) from Tony Cyran (Supplemental Report) dated 5/24/01

34.    C.V. of Ross Muscolino (Expert Witness)

35.    Deposition Transcript of Fuller Development Company by William W. Durie dated 5/16/05

36.     Deposition Transcript of Felice A. Balkin dated 5/16/05

37.     Deposition Transcript of James Bruno dated 9/13/05

38.     Deposition Transcript of John H. Alba dated 9/13/05

39.     Deposition Transcript of John Romano dated 9/20/05

40.     Deposition Transcript of Daniel Gardecki dated 9/20/05

41.     Contract between defendant subcontractor and owner/Fuller/general contractor

42.     Accident Report

43.     George A. Fuller Company's Daily Log from 12/1/00-12/29/00


THE PLAINTIFF,
WALTER PRINCISVALLE


By:_____
    F. Timothy McNamara, Esq.
    F. Timothy McNamara, P.C.
    102 Oak Street
    Hartford, CT  06106
    Tel. (860) 249-8458
    Fax  (860)249-8850
    Federal Bar No. ct04227

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid on this 18th day of November, 2005 to:

Joseph A. La Bella, Esq.
D'Attelo & Shields
500 Enterprise Drive
Rocky Hill, CT  06067

_____
F. Timothy McNamara, Esq.
F. Timothy McNamara, P.C.